☐ ORIGINAL

Judge Hellerstein

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NORTH FACE APPAREL CORP., a Delaware Corporation; and PRL USA HOLDINGS, INC., a Delaware corporation,

                Plaintiffs

v.

FUJIAN SHARING IMPORT & EXPORT LTD. CO., d/b/a B2BSHARING.COM; DONGPING LIU; YUAN CHEN; ANDY HUANG; *et al.*

                Defendants.

CIVIL ACTION NO. 10 CIV 1630

DECLARATION OF BARBARA J. KAPLAN IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, DOMAIN NAME TRANSFER ORDER, ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116]

---

Barbara J. Kaplan, under penalty of perjury, declares and says:

1. I am a Vice President of Plaintiff The North Face Apparel Corp., owner of the THE NORTH FACE trademarks and domain names in the United States and elsewhere throughout the world, including China. The North Face Apparel Corp. and its predecessors-in-interest are collectively referred to as "The North Face." For the past ten years, I have supervised The North Face's enforcement program in the United States and worldwide. During that time, I have overseen hundreds of investigations involving the manufacture, distribution, offer for sale and sale of counterfeit products bearing The North Face's trademarks.

2. I make this declaration in support of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order, Seizure Order, Domain Name Transfer Order, Expedited Discovery Order and Order to Show Cause for Preliminary Injunction against Defendants Fujian

1

Sharing Import & Export Ltd. Co., d/b/a B2BSHARING.COM; Dongping Liu a/k/a Dong Ping Liu; Yuan Chen; Andy Huang; *et al.*

3. The information contained in this declaration is based upon my personal knowledge and/or review of The North Face's business records.

4. The North Face is the owner of the entire right, title and interest in and to dozens of federally-registered trademarks and service marks for apparel, footwear, backpacks, and other products as well as for retail services and on-line retail services in those fields. These trademarks include the word mark THE NORTH FACE, the composite word and design marks  and , and the Design only mark (the "THE NORTH FACE Marks"). The THE NORTH FACE Marks that form the basis of this action (see Complaint) are registered with the United States Patent and Trademark Office ("USPTO"), and remain valid, subsisting, unrevoked and uncancelled. In addition, many of the THE NORTH FACE Marks have become incontestable.

5. The THE NORTH FACE® brand, symbolized by the THE NORTH FACE Marks, is among the world's preeminent symbols of high-quality technical and casual outdoor apparel, footwear, and equipment. The North Face has used its THE NORTH FACE Marks on and in connection with products such as parkas, jackets, vests, shirts and sweaters, pants and shorts, footwear, hats and caps, backpacks, climbing equipment, sleeping bags, and tents ("The North Face Products").

6. Since as early as 1966, The North Face has been using the THE NORTH FACE Marks in connection with the advertising and sale of The North Face Products in interstate,

intrastate and/or foreign commerce, including commerce in the State of New York and in this judicial district.

7.      The North Face's continuous and expanding use of the THE NORTH FACE Marks on The North Face Products has extended The North Face's renown and enabled it to achieve fame in the performance and casual apparel, equipment and footwear markets. Consumers and those within the outdoor apparel, footwear, and equipment industries have come to recognize the THE NORTH FACE Marks as a symbol of high quality and that The North Face Products in the United States originate with The North Face.

8.      In 2009 alone, The North Face spent over $15 million advertising and promoting The North Face Products and the THE NORTH FACE Marks and sold more than $600 million of The North Face Products worldwide.

9.      The North Face maintains quality control standards for all of its The North Face Products. Genuine The North Face Products are distributed through The North Face's worldwide network of authorized dealers.

10.     The North Face actively enforces THE NORTH FACE Marks. Enforcement activities include pursuing counterfeiters of The North Face Products. The North Face has investigated in hundreds of counterfeiters, often in conjunction with law enforcement and Customs officials in the United States and elsewhere throughout the world. The North Face has also pursued counterfeiters through civil litigation here and abroad.

11.     The North Face has recently learned of a massive online counterfeiting enterprise that to date encompasses operation of more than 130 online retail sites (investigation into the scope of the scheme is ongoing and we expect the number of sites discovered to rise). These "e-tailers" develop websites designed to mislead consumers into believing that the sites belong to

authorized dealers of genuine The North Face Products. This counterfeiting enterprise has registered thousands of domain names, dozens of which incorporate the THE NORTH FACE Marks.

12. Defendants have no authorization from The North Face to manufacture, sell, offer to sell, advertise, market, import, or export The North Face Products or any other goods or services bearing the THE NORTH FACE Marks. Defendants have no authorization from The North Face to use the THE NORTH FACE Marks in domain names or elsewhere. There is no legitimate reason for Defendants' use of the THE NORTH FACE Marks.

13. The size, interconnectedness, organization, and scale of Defendants' online activities are beyond the scope of anything that The North Face has previously encountered.

14. Based upon Plaintiffs' investigations to date, it appears that Defendants are located offshore, most likely in China, but are selling goods to consumers in the United States (and in Manhattan specifically). Given the anonymous nature of the Internet and the efforts Defendants have made to conceal their identities, Plaintiffs' investigators have not yet been able to establish Defendants' true identities or the entire scope of Defendants' activities.

15. In my experience, persons and organizations engaged in counterfeiting activities such as those described herein will take additional steps to go farther "underground," further camouflaging and hiding their identities and assets, at the first instant they become aware of any kind of proceeding against them (or even of the contemplation of a proceeding, such as in a cease-and-desist letter). This denies the trademark owner-plaintiff's ability and right to an equitable accounting under the Lanham Act and applicable case law (see accompanying Memorandum of Law for a detailed discussion of the relevant legal issues).

16. Specifically, it is extremely likely that if Defendants are given notice, they will move quickly to change their operations. They will remove and hide records, Counterfeit Products and monies that would otherwise be subject to a seizure order and to an equitable accounting for profits such that neither Plaintiffs nor this Court would ever be able to hope to discover their new locations, much less exercise jurisdiction or gain control over the monies themselves. Defendants would set up their operations on yet another vast array of web sites, register another litany of domain names, and use yet other Internet service providers and payment providers This very real risk of disappearance and destruction is particularly high when, as here, the illicit activities are conducted anonymously over the Internet and appear to be run from China. Evidence can be destroyed by simply deleting electronic files. A seizure order limiting the transfer of Defendants' assets and permitting expedited discovery is critical if The North Face is to have even the remotest chance of preserving the status quo.

17. In compliance with § 1116(d)(4)(B)(ii) of the Lanham Act, The North Face has not published or publicized the seizure requested herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 23, 2010.

_____
Barbara J. Kaplan