# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/10

|   |   |
|---|---|
| THE NORTH FACE APPAREL CORP., a Delaware Corporation, and PRL USA HOLDINGS, INC., a Delaware Corporation, | CIVIL ACTION NO. 10-CIV-1630 (AKH) |
| Plaintiffs | [~~PROPOSED~~] ORDER FOR CONTEMPT |
| v. |  |
| FUJIAN SHARING IMPORT & EXPORT LTD. CO. d/b/a B2BSHARING.COM; DONGPING LIU a/k/a DONG PING LIU; YUAN CHEN; ANDY HUANG; MIN CHEN; CAI XIAN SHENG; MICHAEL LIN; LIMING WANG a/k/a JUNZHENG JIA; FANG CHENG; WEIXIAN LIN; ZHOU CHANG; PP JINBO; JERRY URBEN; HUNAG YANXIA; WANG ZHAO HUI; CHENGYUAN ZHAO; ZHAO HUI; ZHANG XUE PING; QINGXIONG SU; CAI XIANGJIAO; ZHUANG TING TING; XU DAN; INFEI YE; ZOU JIA QI; LIU ZHAO DI; CHENG XIAO RONG; XIE ZHAO XI; HUANG DENIG QIANG; JIE ZHAO; LIN XIA MEI; WENG FENG ZHU; JIA DE BAO; QIAO YAN PING; XI QIANG; TAO ZHU; LIN JIAN PING; CAI ZHONG YING a/k/a NANCY LIN; WANG XUEMIN; JUNMIN JIA; LIU SU JUN; FANMING WU; HUANG ZHI BING; CONGLONG LIN; LIU LIN FIANG; GUO XUE LIANG; MING FENQ GU; ZHENG YU TANG; CHEN WEIGUI; YU JIA LONG; LU XIAO YANG; LIU QIAO LING; CHEN JIAN SHENG; CAO CHUN LIN; CHEN JIAN; JIANG LONG SHENG; |  |

| |
|---|
| MA SHI LEI; JUNJIE JIA; HUANG JIAN XIONG; CHENG XIAN WEI; WANG ZHEN YONG; JIAN CHEN LIN; QIU LI SHAN; XIAN TING; WANSHAN LIN; CHEN QING CHONG; HUANG JIAN RUI; ZHIYAN LI; RUI YANG; YOU ZONG YANG; MI GUI YING; LU XIN LUAN; CHEN JIANFANG; RUI ZHANG IXIE; ZHIANG SHU; LIN YI CHUN; LI ZHAN; LU MINGZHI; WU ZHIYONG; WANG YUN MINGZHI; TIAN ZHENHUA; GUO ZHI BIN; MIAO CHUN LAN; WENG YI XIN; LIANG XIAOYANG; YIN LI YING; FAN QIANG; LI XUE FENG; GUAN WEI JIAN; SUN CUI RONG; XIU MINGZHI; CAI YUN JING; YE XIN ZHUO; CHEN SHUANG YING; CHEN YA BO; SU YUAN LIAN; GUO SUQING; LIN JUN QIN; WANG ZHI XIANG; XIE CHAO; FAN KEYANG; CAI YA QUAN; WENG YUAN DONG; CHEN SHUN JIN; XU WEIQUN; ZHU TING MING; JOHN AND JANE DOES; AND XYZ COMPANIES, |
| Defendants. |

WHEREAS THIS COURT entered an *ex parte* temporary restraining order, seizure order, asset restraining order, domain name transfer order, and order to show cause for a preliminary injunction on March 2, 2010 (the "TRO"), and a Preliminary Injunction on March 16, 2010 continuing the relief set forth in the (the "PI"); and

WHEREAS THIS COURT, on September 13, 2010, entered a Default Judgment and Permanent Injunction against Defendants and in favor of Plaintiffs in the sum of $78,000,000 and a permanent injunction continuing the relief set forth in the Order, *inter alia*, permanently enjoining and restraining Defendants FUJIAN SHARING IMPORT & EXPORT LTD. CO. d/b/a

2

B2BSHARING.COM, DONGPING LIU a/k/a DONG PING LIU, YUAN CHEN, ANDY HUANG, MIN CHEN, CAI XIAN SHENG, MICHAEL LIN, LIMING WANG a/k/a JUNZHENG JIA, FANG CHENG, WEIXIAN LIN, ZHOU CHANG, PP JINBO, JERRY URBEN, HUNAG YANXIA, WANG ZHAO HUI, CHENGYUAN ZHAO, ZHAO HUI, ZHANG XUE PING, QINGXIONG SU, CAI XIANGJIAO, ZHUANG TING TING, XU DAN, INFEI YE, ZOU JIA QI, LIU ZHAO DI, CHENG XIAO RONG, XIE ZHAO XI, HUANG DENIG QIANG, JIE ZHAO, LIN XIA MEI, WENG FENG ZHU, JIA DE BAO, QIAO YAN PING, XI QIANG, TAO ZHU, LIN JIAN PING, CAI ZHONG YING a/k/a NANCY LIN, WANG XUEMIN, JUNMIN JIA, LIU SU JUN, FANMING WU, HUANG ZHI BING, CONGLONG LIN, LIU LIN FIANG, GUO XUE LIANG, MING FENQ GU, ZHENG YU TANG, CHEN WEIGUI, YU JIA LONG, LU XIAO YANG, LIU QIAO LING, CHEN JIAN SHENG, CAO CHUN LIN, CHEN JIAN, JIANG LONG SHENG, MA SHI LEI, JUNJIE JIA, HUANG JIAN XIONG, CHENG XIAN WEI, WANG ZHEN YONG, JIAN CHEN LIN, QIU LI SHAN, XIAN TING, WANSHAN LIN, CHEN QING CHONG, HUANG JIAN RUI, ZHIYAN LI, RUI YANG, YOU ZONG YANG, MI GUI YING, LU XIN LUAN, CHEN JIANFANG, RUI ZHANG IXIE, ZHIANG SHU, LIN YI CHUN, LI ZHAN, LU MINGZHI, WU ZHIYONG, WANG YUN MINGZHI, TIAN ZHENHUA, GUO ZHI BIN, MIAO CHUN LAN, WENG YI XIN, LIANG XIAOYANG, YIN LI YING, FAN QIANG, LI XUE FENG, GUAN WEI JIAN, SUN CUI RONG, XIU MINGZHI, CAI YUN JING, YE XIN ZHUO, CHEN SHUANG YING, CHEN YA BO, SU YUAN LIAN, GUO SUQING, LIN JUN QIN, WANG ZHI XIANG, XIE CHAO, FAN KEYANG, CAI YA QUAN, WENG YUAN DONG,

3

CHEN SHUN JIN, XU WEIQUN, ZHU TING MING, JOHN and JANE DOES, and XYZ COMPANIES, where JOHN and JANE DOES and XYZ Companies referred to individuals and/or entities who own, owned or have created other domain names, websites, and/or payment accounts to manufacture, export, import, distribute, promote, advertise, offer for sale and/or sell goods bearing Plaintiffs' federally registered trademarks ("Plaintiffs' Marks") (collectively referred to as "Defendants"), their officers, agents, servants and employees and any persons in active concert or participation with them, including but not limited to Internet Service Providers ("ISPs"), from:

> (i) using Plaintiffs' federally registered trademarks or any reproduction, counterfeit, copy or colorable imitation of Plaintiffs famous trademarks in connection with the manufacture, distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of Plaintiffs, or in any manner likely to cause others to believe that Defendants' products are connected with Plaintiffs or Plaintiffs' genuine merchandise bearing Plaintiffs' Marks; and
> (ii) passing off, inducing or enabling others to sell or pass off any apparel, backpacks, gloves, shoes or other items which are not Plaintiffs' genuine merchandise as and for Plaintiffs' genuine merchandise; and
> (iii) committing any other acts calculated to cause purchasers and/or the general public to believe that Defendants' products are Plaintiffs' genuine merchandise unless they are such; and
> (iv) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner apparel or other items falsely bearing Plaintiffs' Marks, or any reproduction, counterfeit, copy or colorable imitation of same; and
> (v) utilizing or registering any domain names that use or incorporate any of Plaintiffs' Marks; and
> (vi) operating or hosting Defendants' websites; and
> (vii) assisting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (vi);

(the "Permanent Injunction"). The TRO, PI and Permanent Injunction are collectively referred to as the "Order"; and

4

WHEREAS on December 2, 2010, this Court having entered an Amended Default Judgment and Permanent Injunction and *ex parte* Temporary Restraining Order, Asset Restraining Order, and Order To Show Cause Why Defendants Should Not Be Held in Contempt of this Court's Order And Why The Order Should Not Be Modified (collectively, the "Order to Show Cause"); and the Court having considered the above, and having reviewed the memorandum of law, supporting declarations and exhibits submitted with the Order to Show Cause and having been fully advised on all relevant matters, and with good cause appearing, therefore, the Court finds,

1. The Order is clear and unambiguous, as well as specific and definite enough to apprise Defendants of the conduct that is proscribed;

2. Defendants have notice of the Order;

3. Defendants have not diligently attempted to comply with the Order in a reasonable manner, and the proof of their continued and flagrant noncompliance is clear and convincing;

4. Defendants have violated the terms of the Order in that they have operated and continue to operate online counterfeiting networks, manufacturing, distributing, promoting, advertising and otherwise optimizing the online presence of and driving traffic to their websites, offering for sale and/or selling goods bearing counterfeits and infringements of Plaintiffs' Marks ("Counterfeit Goods") as well as counterfeits of other trademarked goods, at wholesale and retail to buyers in the United States and elsewhere, including in this Judicial District, including that Defendants continue to register additional domain names and utilize websites connected to those

domain names to conduct their counterfeit operations ("Defendants' Domain Names"), including but not limited to, those listed in **Exhibit 1** attached hereto;

5. Defendants have continued and continue, in bad faith, to use and/or register Plaintiffs' Marks in many of Defendants' Domain Names ("Defendants' Infringing Domains"), including but not limited to those listed in **Exhibit 2** attached hereto;

6. Defendants have continued and continue to open new payment processing accounts, primarily with PayPal®, utilizing a seemingly infinite number of email accounts; and

7. Defendants are able to continue their open contempt of this Court's Order through the virtual autonomy of the Internet, by *inter alia*, hiding behind false names and identities; utilizing privacy-protection services; registering new domain names, email accounts and payment accounts; and switching Internet services between offshore hosts;

8. Defendants are in contempt of this Court's Order and will continue to act in contempt of this Court's Order; and

9. Plaintiffs continue to suffer irreparable harm and without the entry of this order ("Order for Contempt") allowing for ongoing action by Plaintiffs will continue to suffer irreparable harm.

THEREFORE THIS COURT HEREBY ORDERS that:

1. Defendants and their officers, servants, employees and agents and any persons in active concert or participation with them, and any banks, savings and loan associations, payment processors or other financial institutions, including without limitation PayPal®, or other merchant account providers, payment providers, third party processors or ecommerce or auction websites

or providers for any Defendants, any of Defendants' operations, or any of Defendants' websites, including, but not limited to, those associated with Defendants' Domain Names, transfer all money in accounts connected to Defendants or their websites to Plaintiffs, up to and including any amount less than seventy-eight million dollars ($78,000,000) less any funds previously recovered by Plaintiffs from Defendants in satisfaction of the monies owed by Defendants pursuant to the outstanding Default Judgment and Permanent Injunction entered by this Court.

2. The domain name registries, having notice of this Order for Contempt, including but not limited to Verisign, Inc., Neustar, Inc., Afilias Limited, Public Interest Registry, and Dot TK, and/or the individual registrars holding or listing one or more of Defendants' Domain Names, disable Defendants' Domain Names and make them inactive and untransferable, unless and until Plaintiffs request that any given domain name be re-activated.

3. The domain name registries, having notice of this Order for Contempt, including but not limited to Verisign, Inc., Neustar, Inc., Afilias Limited, Public Interest Registry, and Dot TK, and/or the individual registrars holding or listing one or more of Defendants' Infringing Domains, immediately transfer the Defendants' Infringing Domains to the ownership and control of Plaintiffs, through the registrar of Plaintiffs' choosing, unless Plaintiffs elect that any individual domain name not be transferred.

4. Any third party having notice of this Order for Contempt and providing services in connection with any Defendant and/or Defendant's website, including without limitation ISPs, back-end service providers, web designers, sponsored search engine or ad-word providers discontinue and disable service to any websites owned or controlled by Defendants in connection

with their counterfeiting activities, including, but not limited to, those connected to Defendants' Domain Names.

5. If ISPs hosting any websites owned or controlled by Defendants in connection with their counterfeiting activities, including, but not limited to, those connected to Defendants' Domain Names, are unresponsive to this Order for Contempt, any parties having notice of this Order for Contempt and responsible for allocating and/or delegating the IP addresses used by Defendants' websites, including but not limited to Ripe NCC and the Internet Assigned Numbers Authority (IANA), shall, within three (3) days of being given notice, de-delegate or otherwise deny access to the IP addresses used by those Defendants' websites.

6. Ecommerce and auction websites having notice of this Order for Contempt, including but not limited to eBay, iOffer, and Tradekey delete any and all accounts and listings associated with Defendants.

7. In accordance with this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, until Plaintiffs have recovered the full payment of monies owed to them by Defendants under the Amended Default Judgment and Permanent Injunction:

    a. As Plaintiffs discover new monies belonging to or controlled by or on behalf of Defendants, Plaintiffs shall have the ongoing authority to provide notice of this Order for Contempt on Defendants or any party controlling or otherwise holding such accounts, including but not limited to PayPal® or other merchant account providers, payment providers, third party processors or ecommerce or auction websites or providers (collectively, "Account Holders") shall immediately locate

all accounts and/or assets connected to Defendants' and/or Defendants' websites and/or accounts, provide Plaintiffs with the contact information for those websites and/or accounts and immediately be temporarily restrained and enjoined from transferring or disposing of any money, stocks or other of Defendants' assets, and restrain all monies and/or assets, not allowing such funds to be transferred or withdrawn, and not allowing any refunds, charge-backs, or other diminutions to be made from such accounts; and

b. Within two (2) days after any account is restrained, Plaintiffs shall serve this Order for Contempt by email or other reasonable means to the contact information associated with that account containing a notification that the account has been restrained pursuant to this Order for Contempt; and

c. After ten (10) business days following the service of this Order for Contempt, Account Holders shall transfer all monies in the restrained accounts to Plaintiffs, unless the Account Holders have filed with the Court and served upon Plaintiffs' counsel a request that such monies be exempted from this order because, *inter alia*, particular assets are not proceeds of Defendants' counterfeiting activities and/or do not belong to Defendants, in which case those particular assets shall not be transferred unless and until a decision by this Court.

8. In accordance with this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, and due to Defendants' ongoing proliferation of domain names for operation of its counterfeiting activities:

9

a. As Plaintiffs discover new domain names, registered by Defendants, containing Plaintiffs' Marks or marks confusingly similar thereto, and/or used in conjunction with the sale of counterfeit goods (whether or not the newly-detected domains contain Plaintiffs' Marks or marks confusingly similar thereto) ("Newly-Detected Domains"), Plaintiffs shall have the ongoing authority to provide notice of this Order for Contempt on the domain name registries and/or the individual registrars holding and/or listing one or more of the Newly-Detected Domains; and

b. The domain name registries and/or the individual registrars holding and/or listing one or more of the Newly-Detected Domains, within two (2) days after having been provided notice pursuant to 8.a. shall temporarily disable any Newly-Detected Domains and make them inactive and untransferable; and

c. Within two (2) days after any Newly-Detected Domains are disabled, Plaintiffs shall serve this Order for Contempt by email or other reasonable means to the contact information associated with that domain name in the WhoIs database, containing a notification that the Newly-Detected Domains have been disabled pursuant to this Order fro Contempt; and

d. After ten (10) business days following the service of this Order for Contempt pursuant to 8.c., the registries and/or the individual registrars shall transfer the Newly-Detected Domains to the ownership and control of Plaintiffs, through the registrar of Plaintiffs' choosing, unless Plaintiffs request that such Newly-Detected Domains be released rather than transferred.

9. In accordance with this Court's inherent equitable powers and its power to coerce compliance with its lawful orders, and due to Defendants' ongoing proliferation of websites for operation of their counterfeiting activities:

    a. As Plaintiffs discover new counterfeiting websites operated by Defendants, Plaintiffs shall have the ongoing authority to provide notice of this Order for Contempt on any third party providing services in connection with any Defendant and/or Defendants' websites, including without limitation ISPs, back-end service providers, web designers, sponsored search engine or ad-word providers, and any parties delegating IP addresses ("Internet Providers"); and

    b. The Internet Providers shall within two (2) days discontinue all services for Defendants' website(s).

10. Upon two (2) business days' written notice to the Court and Plaintiffs' counsel, any Defendant may, upon proper showing, appear and move for the dissolution or modification of the provisions of this Order for Contempt.

11. The seal on this Order for Contempt and its associated documents is hereby removed.

12. The bond posted by Plaintiffs is hereby released.

13. This Court shall retain jurisdiction to the extent necessary to enforce this Order for Contempt and to determine any issues that may arise thereunder.

Dec. 20 2010
N.Y.C

U.S. District Judge