**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE NORTH FACE APPAREL CORP., a Delaware Corporation; and PRL USA HOLDINGS, INC., a Delaware corporation,<br><br>      Plaintiffs<br><br>  v.<br><br>FUJIAN SHARING IMPORT & EXPORT LTD. CO. d/b/a B2BSHARING.COM; DONGPING LIU a/k/a DONG PING LIU; YUAN CHEN; ANDY HUANG; *et al.*<br><br>      Defendants. | CIVIL ACTION NO. 10-CIV-1630 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**APPLICATION FOR AN ORDER TO SHOW CAUSE WHY PUBLIC**
**INTEREST REGISTRY SHOULD NOT BE HELD IN CONTEMPT OF**
**THIS COURT'S  DECEMBER 2, 2010 AND DECEMBER 20, 2010 ORDERS**

**GREENBERG TRAURIG, LLP**
200 Park Avenue
34th Floor
New York, New York
(212)801-9200
*Attorneys for The North Face Apparel Corp. and PRL USA Holdings, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ........................................................................................3

ARGUMENT ..................................................................................................................8

I.  THE COURT HAS THE AUTHORITY TO ENJOIN THE PUBLIC INTEREST REGISTRY ...............................................................................................................8

II.  PIR IS IN CONTEMPT OF THIS COURT'S ORDERS, INCLUDING THE COURT'S DECEMBER 2, 2010 AND DECEMBER 20, 2010 ORDERS .....................10

    A.  The Court's December 2, 2010 and December 20, 2010 Orders Are Clear and Unambiguous ..........................................................................11

    B.  PIR's Non-Compliance is Clear and Convincing .....................................12

    C.  PIR Has Not Diligently Attempted to Comply With the Court's December 2, 2010 and December 20, 2010 Orders ..................................14

III.  PLAINTIFFS ARE ENTITLED TO RELIEF FROM CONTEMNOR PIR'S CONTUMACY ........................................................................................................14

    A.  Sanctions Should be Entered Against Contemnor PIR to Coerce its Future Compliance With the Court's December 2, 2010 and December 20, 2010 Orders ..................................................................16

    B.  Plaintiffs Should Be Awarded A Compensatory Fine To Remedy Contemnor PIR's Past Noncompliance With The Court's December 2, 2010 and December 20, 2010 Orders to Recompense Plaintiffs for the Damages Contemnor PIR's Has Caused Them ..............17

    C.  Plaintiffs Are Entitled To Their Attorneys' Fees And Costs Incurred to Pursue This Contempt Motion ...............................................20

IV.  CONCLUSION.......................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
   No. 96 Civ. 9721(PKL)(THK), 2002 U.S. Dist. LEXIS 16323, 2002 WL 2012618
   (S.D.N.Y. Sept. 3, 2002) ................................................................................................ 20

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
   885 F.2d 1 (2d Cir.1989), *cert. denied*, 494 U.S. 1029, (1990) ................................. 20

*Bear U.S.A., Inc. v. Kim*,
   71 F. Supp. 2d 237 (S.D.N.Y. 1999) ............................................................................ 23

*Blockowicz v. Williams*,
   630 F.3d 563 (7th Cir. 2010) .................................................................................... 15, 16

*Burberry Ltd. (UK). v. Burbury-Scarves.com*,
   No. 1:10-mc-00066 ........................................................................................................ 11

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ......................................................................................... 23

*Davidoff v. CVS Corp.*,
   No. 06 Civ. 15332(RJS), 2008 U.S. Dist. LEXIS 36548, 2008 WL 1775410 (S.D.N.Y.
   Apr. 17, 2008) ............................................................................................................... 23

*Donovan v. Sovereign Sec., Ltd.*,
   726 F.2d 55 (2d Cir. 1984) ............................................................................................ 12

*E.E.O.C. v. Local 638*,
   81 F.3d 1162 (2d Cir. 1996) *cert. denied*, 519 U.S. 945 (1996) ................................. 17

*Fendi Adele S.R.I. v. Burlington Coat Factory Warehouse Corp.*,
   No. 06 Civ. 0085(LBS), 2007 U.S. Dist. LEXIS 76812, 2007 WL 2982295 (S.D.N.Y.
   Oct. 10, 2007) .......................................................................................................... 20, 23

*Fils S. A. v. Carousel Handbags*,
   592 F.2d 126 (2d Cir. 1979) ..................................................................................... 17, 23

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   386 U.S. 714, 87 S.Ct. 1404(1967) .............................................................................. 23

*Globalsantafe v. Globalsantafe.Com*,
   250 F. Supp. 2d 610 (E.D.Va. 2003) ........................................................................... 15

*Hutto v. Finney*,
   437 U.S. 678, 93 S.Ct. 2565 (1978), *reh'g denied*, 439 U.S. 1122, 99 S.Ct. 1035 (1979) ....... 17

ii

*In re Crystal Palace Gambling Hall, Inc.,*
   817 F.2d 1361 (9th Cir. 1987) ............................................................... 12

*In re Feit & Drexler, Inc.,*
   760 F.2d 406 (2d Cir. 1985) ................................................................. 13

*In re Metz,*
   231 B.R. 474 (E.D.N.Y. 1999) ............................................................. 13

*In re Zyprexa Injunction,*
   474 F. Supp. 2d 385 (E.D.N.Y. 2007) .................................................. 10

*Int'l Fidelity Ins. Co. v. Draeger Const., Inc.,*
   No. 10-CV-04398-LHK, 2011 WL 132862 (N.D. Cal. Jan. 14, 2011) .................................... 12

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753, 114 S. Ct. 2516 (1994) .................................................. 10

*Milburn v. Coughlin,*
   No. 79 CIV. 5077(RJW)., 2002 WL 392284 (S.D.N.Y. 2002) ................................ 17

*Mingoia v. Crescent Wall Systems,*
   No. 03 Civ. 7143 (THK), 2005 WL 991773 (S.D.N.Y. Apr. 26, 2005) ................. 12, 13, 14, 16

*Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.,*
   289 F. Supp. 2d 373 (S.D.N.Y.2003) ................................................... 20

*New York State Nat'l Org. for Women v. Terry,*
   CA 2d Cir. 1992, 961 F.2d 390, *affirming* 732 F. Supp. 388 (D.C.N.Y. 1990) ...................... 12

*Panic Promotions, Ltd. V. Lennox Lewis,*
   No. 01 Civ. 2709 (HB), 2004 WL 421937 (S.D.N.Y. Mar. 5, 2004) ....................... 13

*Paramedics Electromedicina Commercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.,*
   369 F.3d 645 (2d Cir. 2004) ................................................................ 12

*Reliance Ins. Co. v. Mast Constr. Co.,*
   159 F.3d 1311 (10th Cir. 1999) ........................................................... 20

*Shakman v. Democratic Org. of Cook County,*
   533 F.2d 344, 351 (7th Cir. 1976), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156 (1976).............. 23

*Sunbeam Corp. v. Golden Rule Appliance Co.,*
   252 F.2d 467 (2d Cir. 1958) ................................................................ 17

*United States v. United Mine Workers,*
   330 U.S. 258, 67 S. Ct. 677 (1947)....................................................... 13

NY 241,062,122v3 4-26-11

*W. E. Bassett Co. v. Revlon, Inc.*,
  435 F.2d 656 (2d. Cir. 1970) ............................................................................................. 23

*Waffenschmidt v. Mackay*,
  763 F.2d 711 (5th Cir. 1985) ........................................................................................ 11, 16

*Weitzman v. Stein*,
  98 F.3d 717 (2d Cir. 1996) ................................................................................................ 17

**Federal Statutes**

15 U.S.C. §1116.................................................................................................................... 9

NY 241,062,122v3 4-26-11

## PRELIMINARY STATEMENT

The North Face Apparel Corp. ("TAC") and PRL USA Holdings, Inc. ("PRL") (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Application for an order to show cause why Public Interest Registry ("PIR"), the registry for all .ORG domain names, should not be held in contempt of this Court's prior orders entered on December 2, 2010 and December 20, 2010 ordering, *inter alia*, PIR to disable certain domain names operated by the Defendants in this action ("Defendants' Domain Names") and make them inactive and untransferable. Defendants in this action, through a number of "rogue" web sites ("Infringing Websites"), manufacture, market, distribute and offer for sale products bearing counterfeits of Plaintiffs' famous trademarks ("Counterfeit Products"), including but not limited to the below marks:







(collectively, "Plaintiffs' Marks").

Plaintiffs sought, and were granted, an injunction against Defendants restraining and enjoining Defendants' sale of Counterfeit Products and operation of the web sites associated with the Defendants' Domain Names.   The Court, in recognizing the difficulty of enforcing compliance of international Defendants who operate anonymously online, specifically ordered "domain name registries . . . including . . . Public Interest Registry [the registry for .ORG domain

names] . . . disable Defendants' Domain Names and make them inactive and untransferable, unless and until Plaintiffs request that any given domain name be re-activated."[1] PIR has been given notice of all of the relevant Orders issued by this Court; however, *PIR has refused to comply with the terms of this Court's Orders*.

PIR's non-compliant, contumacious conduct has created "a large hole" in this Court's Orders which were uniquely tailored in order to shut down Defendants' online counterfeiting activity. Defendants, "limited only by their imagination,"[2] have seized upon *PIR's refusal to comply with the terms of this Court's Orders* and have continued unabated their counterfeiting activity at existing .ORG domain names. Furthermore, Defendants have and are continuing to rapidly register new .ORG domain names to transfer their illegal activity from, for example, .COM domain names, *because PIR, **unlike other domain name registries, willfully ignores this Court's Orders.***

At the December 20, 2010 Hearing to Show Cause at which the Court signed the December 20, 2010 Order which *again* expressly ordered " . . . ***Public Interest Registry*** . . . [to] disable Defendants' Domain Names and make them inactive and untransferable . . .",[3] Plaintiffs' counsel alerted the Court that PIR had refused to comply with the Court's Orders and that might require Plaintiffs to request the Court to hold PIR in contempt.

> **MS. ELINGS**: I would like to alert you to one thing that is in our papers. The one registry that is disputing the jurisdiction of this Court is the one that is in charge of the dot-org websites.
>
>       *            *            *
>
> Your Honor, if I may, I was talking about the dot-org registry. We may seek to move contempt, but that will be -- we're trying to settle it with them, but they don't believe this Court has jurisdiction over it.[4]

The Court acknowledged counsel's statement and invited Plaintiffs to return to seek an Order to hold PIR in contempt for its willful failure to comply with the Court's Orders.

> **THE COURT**: You don't need a prior invitation. . . . The doors [of the Court] are open.[5]

---

[1] December 20, 2010 Order for Contempt ("December 20, 2010 Order") at 7.
[2] Transcript from the December 20, 2010 Hearing to Show Cause, at 2.
[3] December 20, 2010 Order at 7.
[4] Transcript from the December 20, 2010 Hearing to Show Cause, at 8-9.
[5] *Id.* at 9.

*NY 241,062,122v3 4-26-11*

Unfortunately, unlike the other domain name registries, *PIR continues to willfully ignore this Court's Orders.* By this motion, Plaintiffs have entered this Court's open doors to obtain an Order holding PIR in contempt of this Court's December 2, 2010 and December 20, 2010 Orders.

## FACTUAL BACKGROUND

**Procedural History**

On March 2, 2010, this Court entered a temporary restraining order enjoining and restraining Defendants, their officers, agents, servants and employees *and any persons in active concert or participation with them* from:

> (i)    using Plaintiffs' Marks or any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks in connection with the manufacture, distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of Plaintiffs, or in any manner likely to cause others to believe that Defendants' products are connected with Plaintiffs or Plaintiffs' genuine merchandise bearing Plaintiffs' Marks; and

> (ii)    passing off, inducing or enabling others to sell or pass off any apparel, backpacks, gloves, shoes or other items which are not Plaintiffs' genuine merchandise as and for Plaintiffs' genuine merchandise; and

> (iii)    committing any other acts calculated to cause purchasers and/or the general public to believe that Defendants' products are Plaintiffs' genuine merchandise unless they are such; and

> (iv)    shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner apparel or other items falsely bearing Plaintiffs' Marks, or any reproduction, counterfeit, copy or colorable imitation of same; and

> (v)    utilizing or registering any domain names that use or incorporate any of Plaintiffs' Marks; and

> (vi)    operating or hosting Defendants' websites.

(the "Temporary Restraining Order").[6] (Emphasis added). The Temporary Restraining Order also ordered, *inter alia*, that domain name registries transfer certain domain names associated with

---

[6] Temporary Restraining Order at 5.

Defendants' Websites to Plaintiffs pending further orders of the Court and deliver to Plaintiffs "copies of documents and records relating to Defendants and Defendants' Websites . . . ."[7]

On March 16, 2010, this Court turned the Temporary Restraining Order into a preliminary injunction, reiterating many of the Temporary Restraining Order's proscriptions, including enjoining and restraining "Defendants, their officers, agents, servants employees and agents *and any persons in active concert or participation with them*" (emphasis added) from taking any of the actions specified in the six paragraphs above and added a seventh proscription:

> (vii)    assisting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (vi).

("Preliminary Injunction").[8]

Plaintiffs served PIR with the Temporary Restraining Order and the Preliminary Injunction by letter dated April 8, 2010 and requested that PIR comply with the Temporary Restraining Order and Preliminary Injunction by transferring a domain name for which PIR acts as a registry to the registrar of Plaintiffs' choosing.[9]  On April 9, 2010, PIR's counsel responded via e-mail and stated that PIR was not subject to jurisdiction in New York[10] and therefore PIR would *not* comply with the terms of the Temporary Restraining Order or Preliminary Injunction. PIR suggested that Plaintiffs obtain an order from a federal court in the Eastern District of Virginia in order to ensure PIR's compliance.  Noticeably PIR did not assert that it was unable to comply with this Court's Temporary Restraining Order or Preliminary Injunction, rather it stated that it would only comply with an order that was obtained from a "court having jurisdiction over (PIR)."[11]

Thereafter, this Court made the Preliminary Injunction final on September 13, 2010, when it also entered a judgment against Defendants in the sum of $78,000,000 (the "Default

---

[7] *Id.* at 6.

[8] Preliminary Injunction at 4-5.

[9] Declaration of Seth Kertzer in Support of Plaintiffs' Application For An Order To Show Cause Why Public Interest Registry Should Not Be Held In Contempt Of This Court's December 2, 2010 and December 20, 2010 Orders, signed March 29, 2011 ("Kertzer Decl.") ¶ 3, Ex. A.

[10] Despite PIR's claims that it is not subject to jurisdiction in New York, Plaintiffs maintain that, independent of the actions taken by PIR in relation to this action, PIR is subject to jurisdiction in New York based on the business it conducts in New York.  *See* C.P.L.R. § 302.  In any event, PIR is subject to the Court's jurisdiction because it has aided and abetted Defendants in violation of the Court's Order and Fed. R. Civ. P 65(d).

[11] April 9, 2010 e-mail from Charles D. Tobin, counsel to PIR, to Plaintiffs' counsel Seth Kertzer. Kertzer Decl. ¶ 4, Ex. B.

4

Judgment and Permanent Injunction"). In the Default Judgment and Permanent Injunction, this Court expressly addressed the practical difficulties Plaintiffs were experiencing in trying to shut down Infringing Websites operated by foreign-based Defendants, which had registered many of Defendants' Domain Names through foreign-based registrars, by making clear that its Order was also directed at the registries:

> IT IS FURTHER ORDERED that, in order to give practical effect to this Permanent Injunction, *the registry or registrar of each of the domain names* that continue to be used by Defendants for sale of Counterfeit Products . . . be disabled and transferred to the ownership and control of Plaintiffs, through the registrar of their choosing . . ..[12] (Emphasis added).

On December 2, 2010, this Court issued a Temporary Restraining Order, Asset Restraining Order, and Order to Show Cause Why Defendants Should Not Be Held in Contempt of this Court's Prior Order, and Why the Order Should Not be Modified ("December 2, 2010 Order"). The December 2, 2010 Order expressly identified PIR as being subject to proscriptions in that Order:

> [I]n accordance with 15 U.S.C. § 1116(a) and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, the domain name registries, including but not limited to... ***Public Interest Registry***... and/or the individual registrars holding or listing one or more of the domain names used in conjunction with any and all domain names owned and controlled by Defendants... shall, within three (3) days, temporarily disable these domain names and make them inactive and untransferable pending further order from this Court...."[13] (Emphasis added).

On December 8, 2010, Plaintiffs served PIR with a copy of the December 2, 2010 Order and informed PIR that the Order explicitly named PIR and required PIR to temporarily disable and make untransferable any Defendants' Domain Names for which PIR serves as the registry.[14] In a letter dated December 9, 2010, PIR's counsel asserted that PIR was not subject to

---

[12] Permanent Injunction and Default Judgment at 6.
[13] December 2, 2010 Order at 13.
[14] December 8, 2010, letter from Plaintiffs' counsel G. Roxanne Elings to David Maher, Senior Vice President Law & Policy, Public Interest Registry, Kertzer Decl. ¶ 5, Ex. C.

5

jurisdiction in New York and therefore was not bound by this Court's December 2, 2010 Order.[15]

PIR again suggested that Plaintiffs obtain an order from a federal district court in the Eastern

District of Virginia "where litigants typically secure orders affecting domain registrations."

Once again, PIR did not assert that it was impossible, or even difficult, for PIR to comply with

the terms of the December 2, 2010 Order, rather PIR raised jurisdictional and First Amendment

arguments as the basis for its refusal to comply with this Court's Orders.

In a follow-up letter dated December 14, 2010, Plaintiffs informed PIR that the relief

contained in the Court's December 2, 2010 Order was specifically designed in order to bar

and/or slow Defendants' widespread counterfeiting activities.[16]  Plaintiffs also informed PIR that

the proper venue for PIR to challenge the Order was with this Court, as the Court that issued the

December 2, 2010 Order.[17]   On December 15, 2010, PIR once again set forth its personal

jurisdictional arguments, asserting that this Court lacked jurisdiction over PIR because "PIR has

no contacts with the Southern District of New York that would render it amenable to the Court's

jurisdiction."[18] As such, PIR continued to maintain its position that it was not bound by the terms

of the December 2, 2010 Order.

On December 20, 2010, this Court entered an Order for Contempt ("December 20, 2010

Order") in which it again expressly ordered PIR to take specified actions.  In its December 20,

2010 Order, this Court ordered, *inter alia*:

> The domain name registries, having notice of this Order for Contempt,
> including but not limited to...***Public   Interest   Registry***...disable

---

[15] December 9, 2010, letter from Charles D. Tobin, counsel to PIR, to Plaintiffs' counsel G. Roxanne Elings, Kertzer Decl. ¶ 6, Ex. D.

[16] December 14, 2010, letter from Plaintiffs' counsel G. Roxanne Elings to from Charles D. Tobin, counsel to PIR, Kertzer Decl. ¶ 7, Ex. E.

[17] *Id.*

[18] December 15, 2010, from Charles D. Tobin, counsel to PIR to Plaintiffs' counsel G. Roxanne Elings, Kertzer Decl. ¶ 8, Exhibit F.  (Despite PIR's assertion that it does not have any "contacts" with this Judicial District, Plaintiffs have learned that PIR transacts regular business with at least one registrar that resides in this District.)

Defendants' Domain Names and make them inactive and untransferable, unless and until Plaintiffs request that any given domain name be reactivated.

The domain name registries, having notice of this Order for Contempt, including but not limited to...***Public Interest Registry***...immediately transfer the Defendants' Infringing Domains to the ownership and control of Plaintiffs, through the registrar of Plaintiffs' choosing, unless Plaintiffs elect that any individual domain name not be transferred.[19] (Emphasis added).

At the December 20, 2010 Hearing to Show Cause, the Court expressly inquired about whether third parties continued to provide services to Defendants and unequivocally stated its intent to enjoin such third parties from providing Defendants with services related to their infringing activities.

In a letter dated March 9, 2011, Plaintiffs served PIR with copies of the Default Judgment and Permanent Injunction as well as the December 2, 2010 and December 20, 2010 Orders and addressed in great detail PIR's assertions that it was not subject to this Court's Orders.[20] Plaintiffs informed PIR that if PIR did not immediately comply with the terms of Court's Orders, Plaintiffs would seek to hold PIR in contempt of this Court's Orders.

On March 14, 2011 PIR's counsel responded stating that PIR would not comply with this Court's Orders and "observe the injunctive language" unless Plaintiffs "have process issued from the Eastern District of Virginia Court."[21]

Although served with each of the Court's Orders identified above and although Plaintiffs have made multiple requests that PIR comply with this Court's Orders, PIR steadfastly refuses to comply.

---

[19] December 20, 2010 Order at 7.
[20] March 9, 2011 letter from Plaintiffs' counsel G. Roxanne Elings to from Charles D. Tobin, counsel to PIR, Kertzer Decl. ¶ 9, Ex. G.
[21] March 14, 2011 letter from Charles D. Tobin, counsel to PIR, to Plaintiffs' counsel G. Roxanne Elings, Kertzer Decl. ¶ 10, Ex. H.

7

## ARGUMENT

### I.   THE COURT HAS THE AUTHORITY TO ENJOIN THE PUBLIC INTEREST REGISTRY

This Court had the power to enter the above-specified Orders, including the December 2, 2010 and December 20, 2010 Orders in which it, *inter alia,* expressly ordered PIR to "disable Defendants' [.ORG] Domain Names." These Orders were issued pursuant to 15 U.S.C. §1116 of the Lanham Act which grants the federal courts the power to impose broad equitable remedies, including the issuance of an injunction to prevent counterfeiting and other violations of the Lanham Act throughout the United States.   Specifically, one of the Lanham Act's remedies sections states:

> Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States may be served on the ***parties against whom such injunction is granted anywhere in the United States where they may be found***, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted . . . ." (Emphasis added).[22]

Thus, to prevent continuing violations of the Lanham Act, a district court may issue an injunction against non-defendant parties[23] wherever they may be found in the United States and that district court may enforce non-compliance with its injunction.   It is especially vital for fulfilling the goal of the Court's Orders that PIR and other registries be required to cooperate in situations such as these, where Plaintiffs are not in a position to use other avenues to prevent Defendants' online counterfeiting and infringing activities, as the majority of the registrars and

---

[22] 15 U.S.C. §1116(a).

[23] PIR is a named "party" in the injunction portion of the Court's December 2, 2010 and December 20, 2010 Orders. "Those persons named in an injunction are considered 'parties' for the purpose of Rule 65(d). *See Madsen v. Women's Health Ctr., Inc.* 512 U.S. 753, 775, 114 S. Ct. 2516, 129 L. Ed. 2d 593 (1994)." *In re Zyprexa Injunction,* 474 F. Supp. 2d 385, 419 (E.D.N.Y. 2007).

ISPs which fall under the scope of the Court's Orders are located outside of the United States and have not respected the Court's Orders.

As this Court well knows, the instant case was brought pursuant to the Lanham Act to prevent wide-scale counterfeiting and trademark violations. Here, the Court has entered a $78,000,000 default judgment against the Defendants as a result of their counterfeiting activities, which the Court found to be enabled by Defendants use of specified domain names, *including those ending in .ORG.* It is the activities taking place at these domain names that are the crux of the matter and which underpin the Court's judgment and finding that injunctive relief, including mandatory proscriptions against PIR, was necessary and appropriate.

PIR's suggestion in its communications with Plaintiffs' counsel that Plaintiffs should instead secure an order from the District Court for the Eastern District of Virginia "where litigants typically secure orders affecting domain registrations" appears to confuse the present case with a commonplace domain name dispute or an *in rem* suit under the Anticybersquatting Consumer Protection Act ("ACPA").

Moreover it appears that the Eastern District of Virginia may refuse to enforce this Court's Orders. In *Burberry Ltd. (UK) v. Burbury-Scarves.com,* No. 1:10-mc-00066 (TSE) (E.D. Va. January 18, 2011), a case remarkably similar to the instant case, the Eastern District of Virginia refused to enforce a preliminary injunction issued by the Southern District of New York, which enjoined PIR, *inter alia,* to "delete[] from [its] root zone servers...Defendants' Websites and Infringing Domain Names."[24] In *Burberry,* the Eastern District of Virginia stated that Burberry's "remedy for PIR's refusal to comply with the preliminary injunction" was not with it, but rather "with the New York district court that . . . adjudicated the issues relating to the preliminary injunction." Citing

---

[24] *Burberry* Order at 1. A copy of the Order in *Burberry* is attached to Kertzer Decl. at ¶ 11 as Exhibit I.

9

*Waffenschmidt v. Mackay,* 763 F.2d 711 (5th Cir. 1985), the Eastern District of Virginia stated "that the New York district court has the power to enforce its own preliminary injunction, ***notwithstanding the fact that PIR resides outside of New York.***"[25] (Emphasis added).

Finally, PIR's assertion that it can not be bound by an injunction issued by this Court is particularly disingenuous given that PIR has complied with numerous "Takedown Orders," issued by federal district courts, *including this Court*, pursuant to Fed. R. Civ. P. 65, which order PIR to disable and transfer certain domain names that are associated with a number of websites conducting illegal business.  Notably, PIR's own web page contains an entire section[26] explaining these "Takedown Orders," and states that such orders have been issued to seize property "used in violation of criminal provisions of copyright and trademark law."  PIR cannot selectively refuse to comply with this Court's December 2, 2010 and December 20, 2010 Orders on the grounds that the Court does not have jurisdiction to issue Orders enjoining non-party PIR, while simultaneously boasting about its compliance with similar Court orders issued by a number of district courts, including this Court.

## II.    PIR IS IN CONTEMPT OF THIS COURT'S ORDERS, INCLUDING THE COURT'S DECEMBER 2, 2010 AND DECEMBER 20, 2010 ORDERS

"A party may be held in civil contempt for failure to comply with a court order if 1) the order the contemnor failed to comply with is clear and unambiguous, 2) the proof of noncompliance is clear and convincing and 3) the contemnor has not diligently attempted to comply in a reasonable manner."[27]

---

[25] *Burberry* Order at 4.

[26] *See,* http://www.pir.org/why/takedowns.

[27] *Mingoia v. Crescent Wall Systems,* No. 03 Civ. 7143 (THK), 2005 WL 991773, at *1 (S.D.N.Y. Apr. 26, 2005), quoting *Paramedics Electromedicina Commercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 655 (2d Cir. 2004).

*NY 241,062,122v3 4-26-11*

Willfulness is not an element of contempt.[28]   In deciding whether a nonparty is bound by the terms of an injunction, as a person acting "in active concert or participation" with the defendant, the court is concerned only with actuality of concert or participation, without regard to any motives that prompt it.   The mere fact that nonparty's actions may have been independently motivated does not mean that it was not acting "in active concert or participation."[29]

Finally, it was not up to contemnor PIR to decide whether to obey the Court Orders, even if it thought that the Orders were erroneously issued.   The U.S. Supreme Court has held that an order issued by a court with proper jurisdiction over the subject matter must be obeyed by the parties.[30]   The Second Circuit has expressly stated that "an order issued by a court must be obeyed by one subject to it, and that if he disobeys he may be punished for contempt even if the order is subsequently ruled to have been erroneous."[31]   "Even a correct and good-faith belief that an order is defective, misguided or erroneous, is an insufficient basis upon which a party may unilaterally disregard a court's order."[32]

### A.   The Court's December 2, 2010 and December 20, 2010 Orders Are Clear and Unambiguous

An order is clear and unambiguous if it is "specific and definite enough to apprise those within its scope of the conduct that is proscribed."[33]   Here the Orders directed against PIR are clear and unambiguous, as they expressly identify PIR as a party required to comply and specifically define the activities to be proscribed.[34]

In the December 2, 2010 Order, this Court made clear that its Order was directed at the domain registries and expressly identified PIR as a party subject to the proscriptions of the Order:

---

[28]   *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55 (2d Cir. 1984); *see also Int'l Fidelity Ins. Co. v. Draeger Const., Inc.*, No. 10-CV-04398-LHK, 2011 WL 132862 (N.D. Cal. Jan. 14, 2011) *citing In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("there is no good faith exception to the requirement of obedience to a court order").
[29]   *New York State Nat'l. Org. for Women v. Terry*, CA 2d Cir. 1992, 961 F.2d 390, *affirming* 732 F. Supp. 388 (D.C.N.Y. 1990).
[30]   *United States v. United Mine Workers*, 330 U.S. 258), 291-301, 67 S. Ct. 677 (1947, *cited in In re Metz*, 231 B.R. 474 (E.D.N.Y. 1999).
[31]   *In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985).
[32]   *Metz*, 231 B.R. at 480.
[33]   *Mingoia*, 2005 WL 991773, at *3, quoting *Panic Promotions, Ltd. V. Lennox Lewis*, No. 01 Civ. 2709 (HB), 2004 WL 421937, at *2 (S.D.N.Y. Mar. 5, 2004).
[34]   *See, supra*, Pg. 6-8.

11

ORDERED that, in accordance with 15 U.S.C. § 1116(a) and this Court's inherent equitable power to issue provisional remedies ancillary to provide final equitable relief, the domain name registries, including . . . *Public Interest Registry* . . . shall . . . disable these domain names and make them inactive and untransferable pending further order from this Court....[35] (Emphasis added).

Similarly, the Court's December 20, 2010 Order again identified PIR as being subject to the proscriptions of the Order:

The domain name registries, having notice of this Order for Contempt, including but not limited to...***Public Interest Registry***...disable Defendants' Domain Names and make them inactive and untransferable, unless and until Plaintiffs request that any given domain name be re-activated.

The domain name registries, having notice of this Order for Contempt, including but not limited to...***Public Interest Registry***...immediately transfer the Defendants' Infringing Domains to the ownership and control of Plaintiffs, through the registrar of Plaintiffs' choosing, unless Plaintiffs elect that any individual domain name not be transferred.[36] (Emphasis added).

## B.    PIR's Non-Compliance is Clear and Convincing

The next step of the contempt analysis is to determine whether the proof of noncompliance with the Order is clear and convincing.[37]  Plaintiffs have presented evidence to decisively establish that PIR has not complied with any of the various elements of the Court's December 2, 2010 and December 20, 2010 Orders.[38]  Rather, PIR has admittedly disregarded the commands of this Court.[39]

Additionally, PIR has and continues to violate the Court's Orders and Fed. R. Civ. P. 65(d)(2), because it has acted and is continuing to act in concert with or in participation with the Defendants in the instant case.  PIR plays an instrumental role in enabling the operation of the

---

[35] December 20, 2010 Order at 13.
[36] December 20, 2010 Order at. 7.
[37] *Mingoia*, 2005 WL 991773 at *1.
[38] *See* Kertzer Decl. ¶¶ 3-10.
[39] *Id.* ¶¶ 4, 6, 8, 10.

12

Internet, specifically *every .ORG domain.*  The Court has determined that Defendants are using specified .ORG domain names to engage in rampant counterfeiting and trademark violations. PIR enables Defendants to conduct this illegal activity on a daily basis by directing domain name queries regarding any second level domain names involving .ORG to the appropriate second-level domain name server, which, in turn, matches the domain name with that domain's specific numeric IP address.[40]  Without the daily assistance of PIR's servers, Defendants could not use the offending .ORG domain names to continue their unlawful conduct.  That PIR has automated this assistance doesn't change the fact that it is assistance to Defendant counterfeiters.  In fact, PIR proudly asserts that "as the world's third largest generic top-level domain" it has 8.5 million "domains under *management.*"[41]  (Emphasis added).

In its March 14, 2011 correspondence, PIR attempts to compare itself to the nonparty website operator in *Blockowicz v. Williams*, 630 F.3d 563 (7th Cir. 2010) which was not held in contempt of the district court injunction because it had taken no action after the issuance of that

---

[40] *See Globalsantafe v. Globalsantafe.Com*, 250 F. Supp.2d 610, 618-619 (E.D.Va. 2003) for a detailed discussion of how top level domain registry, VeriSign, the registry for all domain names ending in ".COM," facilitates individual internet users to access specific domain names.   The teachings of *Globalsantafe* are equally applicable to PIR, the registry for all domain names ending in ".ORG."

Significantly, the [Internet's domain name system] is not a single master file in one location containing all the registered domain names and the corresponding IP addresses,  but rather a hierarchical and distributed system, with each "name server" providing information for its "zone." Under this hierarchical system, the domain name "space" is divided into top-level domains ("TLDs"), such as ".com" and ".net." Each TLD name server provides the information necessary to direct domain name queries to the second-level domain (SLD) name server responsible for the domain name in question. Thus, VeriSign, as the registry for all domain names ending in ".com," is responsible for directing domain name queries regarding the "globalsantafe.com" second level domain to the appropriate SLD name server. This SLD name server, in turn, matches the domain name, e.g. "www.globalsantafe.com," with its specific numeric IP address. In other words, the ".com" TLD zone file maintained by VeriSign contains a list of all second level domains within the ".com" zone linked to the IP addresses of the SLD name servers for those second level domains, while the "globalsantafe.com" SLD name server maintains the file which matches all domain names in the "globalsantafe.com" SLD zone to the IP addresses of the individual host computers. (Footnotes omitted).

[41] PIR publication, "The Dashbord, January to June 2010, Bi-annual Domain Name Report on .ORG, the Public Interest Registry," available at http://www.pir.org/pdf/dashboard_1H_2010.pdf.

injunction. PIR's comparison fails because PIR is not "mere[ly] inactiv[e]." Rather, on a daily basis PIR's computers actively assist the Defendant counterfeiters by enabling individual internet users to access the offending .ORG domain names.

The Eastern District of Virginia's citation to *Waffenschmidt v. Mackay* in the *Burberry* case, *supra*, is also instructive on the issue of PIR's violation of Fed. R. Civ. P. 65(d)(2). In *Waffenschmidt*, the Fifth Circuit held that:

> Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum.[42]

The Eastern District of Virginia's citation to *Waffenschmidt* is a strong indication that it believed that PIR's failure to comply with the Southern District of New York Order in the *Burberry* case that PIR "delete[] from [its] root zone server…Defendants' Websites and Infringing Domain Names" violated Fed. R. Civ. P. 65(d)(2), because by failing to do so PIR was "actively aid[ing] and abet[ting] a party in violating that order."[43]

### C. PIR Has Not Diligently Attempted to Comply With the Court's December 2, 2010 and December 20, 2010 Orders

PIR's letters refusing to comply with the Court's Order clearly established that PIR has not diligently attempted to comply in a reasonable manner with the Courts Orders, despite having received sufficient notice.[44]

### III. PLAINTIFFS ARE ENTITLED TO RELIEF FROM CONTEMNOR PIR'S CONTUMACY

Sanctions in civil contempt proceedings are proper to: (1) coerce a defendant into future compliance with a court's injunction or order; and/or (2) compensate a complainant for losses

---

[42] *Waffenschmidt*, 763 F.2d 711, 714 (5th Cir. 1985).
[43] *Burberry* Order at 1. Kertzer Decl. ¶ 11; Exhibit I.
[44] *Mingoia*, 2005 WL 991773 at *1.

14

sustained and expenses incurred as a result of a defendant's contumacy.[45]  Once civil contempt is established for violation of a court order or decree, a court can compensate a party for all proven damages resulting from the contemptuous conduct.[46]  Such compensation includes remedial or compensatory fines, sanctions, attorneys' fees, costs, and jail sentences.[47]

Civil sanctions are intended to restore the injured parties to the position they would have held had the injunction been obeyed.[48]  The injured party can be restored by a fine imposed to coerce future compliance and to remedy past noncompliance.[49]

PIR's contumacious conduct has allow Defendants to continue operating the Infringing Websites located at .ORG domain names, which has cause extensive harm to Plaintiffs, including lost sales.  Even after being served with the Court's Orders which enjoin Defendants' operation of their counterfeiting websites, Defendants have continued to register new domain names and launch new websites dedicated to the sale of Counterfeit Products.[50]  As one set of websites and domain names is shut down, most often by a registry which, unlike contemnor PIR, complies with the Court's Orders, including, but not limited to, Verisign, NeuStar, and Afilias,[51] Defendants immediately attempt to move their operations to new domain names, internet hosts,

---

[45] *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1177 (2d Cir. 1996) *cert. denied*, 519 U.S. 945 (1996); *Milburn v. Coughlin*, No. 79 CIV. 5077(RJW)., 2002 WL 392284 (S.D.N.Y. 2002) *rev'd on other grounds*.

[46] *Hutto v. Finney*, 437 U.S. 678, 691, 93 S. Ct. 2565, 2573-74 (1978), *reh'g denied*, 439 U.S. 1122, 99 S. Ct. 1035 (1979); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996).

[47] Local Civil Rule 83.9 of the Southern & Eastern Districts of New York.

[48] *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).

[49] *Id. See also Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 470-471 (2d Cir. 1958) (fine for each future violation of order upheld); *Hutto*, 437 U.S. at 691, 95 S. Ct. at 2573-74 (civil contempt may be punished by a remedial fine to compensate party for effects of noncompliance).

[50] Declaration of Tamara Tarbutton in Support of Plaintiff's Application for an Order to Show Cause Why Public Interest Registry Should Not Be Held in Contempt of This Court's December 2, 2010 and December 20, 2010 Orders, dated April 25, 2011("Tarbutton Decl.") ¶ 6.

[51] Verisign, Neustar, and Afilias are domain name registries that are also named in the Court's December 2, 2010 and December 20, 2010 Orders.  Verisign manages the directories of domain names with .COM and .NET extensions.  Afilias manages the directories of domain names with .INFO extensions.  NeuStar manages the directories of domain names with .BIZ and .US extensions.  Verisign, NeuStar and Afilias have complied with the Court's Orders.

15

and accounts.[52]   Furthermore, the facts would suggest that Defendants have learned that Infringing Websites located at .ORG domain names have not been shut down pursuant to the Court's Orders, and a result, Plaintiffs investigators have detected a widespread proliferation of newly-established Infringing Websites located at .ORG domain names.[53]

Plaintiffs' investigators have also determined that Defendants' Infringing Websites located at .ORG domain names have enjoyed a substantial increase in traffic as the Infringing Websites located at *inter alia*, .COM, .NET, .US and .BIZ domain names have been disabled by the registries which have complied with the Court's Orders.[54]   As a single example, Defendants operate an Infringing Website at the domain name thenorthfaceoutlet.org.   Pursuant to the Court's December 2, 2010 and December 20, 2010 Orders, Plaintiffs, in conjunction with Verisign, disabled Infringing Websites located at the domain names thenorthfaceoutlet.com and thenorthfaceoutlet.net.   Contemporaneously with the disabling of the .COM and .NET versions of the Infringing Websites, the internet traffic to the thenorthfaceoutlet.org increased from 2,367 unique visitors in November 2010 to 11,422 unique visitors in December 2010.[55]

### A.   Sanctions Should be Entered Against Contemnor PIR to Coerce its Future Compliance With the Court's December 2, 2010 and December 20, 2010 Orders

Contemnor PIR is fully aware of the Court's December 2, 2010 and December 20, 2010 Orders, *inter alia,* directing it to deactivate the Defendants' offending .ORG domain names so that the foreign-based Defendants will be precluded from using these domain names to continue and further their wide-scale counterfeiting activities.   Nevertheless, PIR willfully refuses to comply with the Court's Orders, because it asserts that this Court did not have the power to enter

---

[52] *Id.*
[53] *Id.*
[54] *Id.* ¶ 7.
[55] *Id.*

16

those Orders against it.  As the lengthy history of this matter demonstrates, PIR will not voluntarily change its contumacious conduct and comply with the Court's Orders.  As a result, a civil fine paid to Plaintiffs must be entered against PIR to coerce PIR to comply with the Court's Orders.  Without a stiff fine levied against PIR for its past noncompliance and a warning that PIR's future noncompliance will result in a daily stiff fine, PIR will not comply.

**B.**  **Plaintiffs Should Be Awarded A Compensatory Fine To Remedy Contemnor PIR's Past Noncompliance With The Court's December 2, 2010 and December 20, 2010 Orders to Recompense Plaintiffs for the Damages Contemnor PIR's Has Caused Them**

Contemnor PIR should be required to pay a fine to Plaintiffs to compensate Plaintiffs for their damages resulting from Defendants' continuing widespread counterfeiting activity because PIR has and continues to willfully aid and abet Defendants' counterfeiting activity on a daily basis by enabling Defendants to use an increasing number of specified .ORG domain names to engage in rampant trademark counterfeiting and infringement.[56]  Without the daily assistance of PIR's servers, Defendants could not use the offending .ORG domain names to continue their unlawful conduct.  Defendants' continuing counterfeiting activities have caused Plaintiffs to suffer substantial damages and because Contemnor PIR has facilitated this continuing counterfeiting activity PIR should be *also* held liable to Plaintiff for these damages.[57]

The fact that the Court should look to "compensate" a plaintiff for losses resulting from the defendant's contempt does not mean that the plaintiff may only recover upon proof of "actual pecuniary loss."[58]  On the contrary, "profits derived by the contemnor from violation of a court order . . . are an equivalent or substitute for legal damages, when damages have not been shown,

---

[56] *Supra* pp. 13-15.

[57] *See e.g., Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311 (10th Cir. 1999) (holding that third-party contemnor can be held liable for damages resulting from contemnor's willful violation of the court's injunction).

[58] *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989), *cert. denied*, 494 U.S. 1029, (1990).

and are recoverable not by way of punishment but to insure full compensation to the party injured."[59]

None of the Defendants have answered or otherwise appeared in this action, making it impossible for Plaintiffs to conduct discovery regarding sales and profit information directly from Defendants.[60]  However, financial records obtained from PayPal, Inc. ("PayPal") show that Defendants' sales of Counterfeit Products at the Infringing Websites have been highly lucrative, with some of the PayPal accounts showing sales of hundreds of thousands of dollars over a short period of time.[61]  Additionally, in communication with Plaintiffs' investigators, Defendants claim that a given Infringing Website, with search engine optimization, can generate profits of $200 a day or $6,000 a month.[62]  The December 2, 2010 and December 20, 2010 Orders identified twenty-eight (28) Infringing Websites located at .ORG domain names.  Based on these numbers, Plaintiffs estimate that the PIR's willful violation of the Court's December 2, 2010 and December 20, 2010 Orders have enabled Defendants to generate profits of approximately $672,000 in the four months that have lapsed since PIR was first notified of the December 2, 2010 Order (28 Infringing Websites x $6,000 per month profit per web site x 4 months = $672,000).

Contemnor PIR, the only U.S.-based entity capable of preventing Defendants from continuing their counterfeiting activity at Infringing Websites located at .ORG domain names,

---

[59] *Id.* at 5-6 (citations and internal quotation marks omitted); *see also, e.g., Nat'l Basketball Ass'n v. Design Mgmt. Consultants, Inc.,* 289 F. Supp. 2d 373, 378 (S.D.N.Y. 2003) ("[P]laintiffs are entitled to the net profits defendants earned from selling Disputed Merchandise in violation of the Order."); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* No. 96 Civ. 9721(PKL)(THK), 2002 U.S. Dist. LEXIS 16323, at *35, 2002 WL 2012618 (S.D.N.Y. Sept. 3, 2002) (awarding plaintiff in a civil contempt action "a compensatory fine equal to any profits made by [defendant] via activities in violation of the preliminary injunction"); *Fendi Adele S.R.I. v. Burlington Coat Factory Warehouse Corp.,* No. 06 Civ. 0085(LBS), 2007 U.S. Dist. LEXIS 76812, at *16, 2007 WL 2982295 (S.D.N.Y. Oct. 10, 2007) (ordering disgorgement of defendants profits as a civil contempt sanction).

[60] Kertzer Decl. ¶ 12.

[61] *Id.*

[62] Declaration of Matthew Hewlett, dated February 23, 2010, Docket No. 19 ("Hewlett Decl.") ¶ 22.

18

has willfully ignored the Court's December 2, 2010 and December 20, 2010 Orders and has aided and abetted Defendants counterfeiting activity at an increasing number of .ORG domain names, enabling Defendants to make profits of at least $672,000. Thus, Contemnor PIR should be required to pay plaintiffs $672,000 as a compensatory fine for the damages that it has caused Plaintiffs.

Clearly the profits that Defendants have and continue to earn from their counterfeiting activities at Infringing Websites located at .ORG domain names, as aided and abetted by PIR, are more than $672,000 and Plaintiffs could, but are not now, seeking such additional damages from PIR in this motion. For example, Plaintiffs could have sought the hundreds of thousands of dollars of damages that PIR caused Plaintiffs as a result of PIR's refusal to comply with this Court's March 16, 2010 Preliminary Injunction, which *inter alia,* enjoined and restrained "Defendants, their officers, agents, servants employees and agents *and any persons in active concert or participation with them*" (emphasis added) from continuing to operate the Infringing Websites, including those located at .ORG domain names. (See *supra* at 4-5 for discussion that PIR was notified about this Court's March 16, 2010 Preliminary Injunction, but that PIR blatantly refused to comply with the Court's Order.)

In addition, since the entry of the Court's December 2, 2010 and December 20, 2010 Orders, Plaintiffs have discovered approximately eighty (80) *additional* Infringing Websites located at .ORG domain names. Based upon PIR's refusal to comply with this Court's Orders, Plaintiffs could have sought to recover compensatory damages from PIR based on the profits earned by Defendants at these *additional* Infringing Websites, but for the present have not done so.

NY 241,062,122v3 4-26-11

With the hope that PIR will end its contumacious conduct and shutdown all of the Defendants' Infringing Websites located at .ORG domain names, Plaintiffs, for the present, have limited the amount of damages that they seeks from Contemnor PIR.

**C.      Plaintiffs Are Entitled To Their Attorneys' Fees And Costs Incurred to Pursue This Contempt Motion**

An "award of costs and attorney fees in civil contempt is clearly proper and wholly independent of an award of compensatory damages."[63]  Stated otherwise, a successful "plaintiff in a civil contempt case may recover not less than the expenses, including counsel fees, which it has incurred in enforcing the disobeyed order of the court."[64]

Most courts in the Second Circuit adhere to the general principle that, for attorneys fees and costs to be awarded on a contempt motion, the contemnor's conduct must have been "willful."[65]  If the Court finds that the defendant's violation was willful, it should then award attorneys' fees and costs "unless there are 'persuasive grounds' to deny them."[66]  "A willful contempt is one where 'the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply."[67]

In this case, as discussed above, contemnor PIR's contumacy is willful.  PIR had notice of all of this Court's Orders, had the ability to comply with the Court's Orders but made _no_ effort to comply with those Orders nor did it seek to have those Orders modified.  Under the

---

[63] *Shakman v. Democratic Org. of Cook County*, 533 F.2d 344, 351 (7th Cir. 1976), *cert. denied*, 429 U.S. 858, 97 S. Ct. 156, 50 L.Ed.2d 135 (1976), *citing W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2d. Cir. 1970). *See also, Vuitton*, 592 F.2d at 130 (holding that if plaintiff is to be made whole for the harm it has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorneys' fees).

[64] *W.E. Bassett Co.*, 435 F.2d at 665, *citing Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S. Ct. 1404, 18 L.Ed.2d 475, 153 U.S.P.Q. 432 (1967).

[65] *Davidoff v. CVS Corp.*, No. 06 Civ. 15332(RJS), 2008 U.S. Dist. LEXIS 36548, at *21-22, 2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008).

[66] *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008) (quoting *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996)).

[67] *Fendi Adele S.R.L.*, 2007 U.S. Dist. LEXIS 76812, at *12, 2007 WL 2982295 (quoting *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999)).

20

circumstances, PIR's non-compliance was willful as of April 9, 2010, the date that PIR notified Plaintiffs that, despite its receipt of the Court's Temporary Restraining Order and Preliminary Injunction, PIR was not willing to comply with the Court's Orders and, as a result PIR should be ordered to pay the attorney's fees and costs incurred by Plaintiffs in attempting to persuade PIR to comply with the Court's Orders and in bringing this contempt motion.

## IV.   CONCLUSION

Without the relief requested by Plaintiffs' instant motion, Defendants' illegal activity will continue unabated, this Court's Orders will have no effect and Plaintiffs, will suffer further irreparable harm to their respective trademarks, goodwill, reputation, and market position.

Dated: April 27, 2011                                        Respectfully submitted,

GREENBERG TRAURIG, LLP

By:

G. Roxanne Elings (elingsr@gtlaw.com)
Seth E. Kertzer (kertzers@gtlaw.com)
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for The North Face Apparel
Corp. and PRL USA Holdings, Inc.*

21