USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/24/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                               :

THE NORTH FACE APPAREL CORP.; PRL USA :     **ORDER DENYING ON**
HOLDINGS, INC.,                                      :      **RECONSIDERATION**
                                                 :     **PLAINTIFFS' MOTION TO**
                    Plaintiffs,                 :     **HOLD PUBLIC INTEREST**
                                                   :     **REGISTRY IN CONTEMPT OF**
      -against-                               :     **THIS COURT'S DECEMBER 2,**
                                                   :     **2010, AND DECEMBER 20, 2010,**
FUJIAN SHARING IMPORT & EXPORT LTD.  :     **ORDERS**
CO.,                                             :
                                                :
                    Defendant.          :     10 Civ. 1630 (AKH)
                                                :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

On June 13, 2011, plaintiffs The North Face Apparel Corp. and PRL USA

Holdings, Inc. and non-party Public Interest Registry appeared before me for oral argument on

plaintiffs' motion, by order to show cause, to hold Public Interest Registry in contempt of this

court's orders dated December 2, 2010, and December 20, 2010. Ruling from the bench, I

granted plaintiffs' motion, subject to a ten-day stay to allow Public Interest Registry an

opportunity either to comply with my December 2 and December 20 orders or to seek, from the

United States Court of Appeals for the Second Circuit, a stay pending appeal. Immediately after

oral argument, I issued a summary order that memorialized my oral ruling.

On June 21, 2011, I sua sponte enlarged by ten days the stay, which otherwise

would have expired on June 23, 2011, and advised the parties that I was reviewing the

appropriateness of my order.

On further consideration, I have come to the belief that the relief I ordered,

however advisable it might have been generally, was not responsive to plaintiffs' motion to hold

Public Interest Registry in contempt.  For the reasons stated below, I vacate my June 13, 2011, ruling and deny plaintiffs' motion.

Plaintiffs initiated the underlying lawsuit in March 2010.  Defendants comprise an online counterfeiting ring, based in China, that manufactures, markets, distributes, offers for sale, and sells, through a large number of "rogue websites," counterfeits of plaintiffs' goods that falsely bear plaintiffs' famous and well-regarded trademarks.  In carrying out their counterfeiting activities, defendants have registered and used a wide array of Internet domain names that contain plaintiffs' trademarks.  The websites associated with defendants' infringing domain names are set up to look like the websites for authorized online retail stores that sell plaintiffs' genuine goods.  No sooner does one website become disabled than defendants are able to shift their business to a new website, succeeding in this way to continue in their counterfeiting business, one step ahead of the processes of law.

In the underlying lawsuit, plaintiffs alleged claims for federal trademark counterfeiting and infringement, unfair competition and false designation of origin, and cybersquatting.  Plaintiffs have sought, and obtained, preliminary and permanent injunctive relief, trying vainly to stop defendants from counterfeiting.

I entered a default judgment and a permanent injunction against defendants in September 2010, after defendants had failed to appear or respond to plaintiffs' complaint.  On plaintiffs' motion, on December 2, 2010, I entered an Amended Default Judgment and Permanent Injunction.  In spite of this court's having awarded tens of millions of dollars in damages and injunctive relief in plaintiffs' favor, and despite this court's having found defendants in civil contempt, defendants persist, to this day, in their counterfeiting activities.

2

Public Interest Registry, a non-profit corporation formed under Pennsylvania law with a sole place of business in Reston, Virginia, manages the registry for, and maintains an authoritative database of, all ".org" domain names on the Internet. Public Interest Registry was neither served with process nor joined as a party in the underlying lawsuit.

On May 2, 2011, plaintiffs moved, by order to show cause, to hold Public Interest Registry in contempt, not of the Amended Default Judgment and Permanent Injunction, but rather of this court's orders dated December 2, 2010, and December 20, 2010. The December 2 order is styled a "Temporary Restraining Order Disabling Defendants' Websites, Asset Restraining Order, and Order to Show Cause Why Defendants Should Not Be Held in Contempt of this Court's Prior Order and Why the Order Should Not Be Modified." The December 2 order requires Public Interest Registry, in relevant part, to "temporarily disable the[] domain names [owned and controlled by Defendants] and make them inactive and untransferable pending further order from th[e] Court." The order dated December 20, 2010, styled an "Order for Contempt," requires Public Interest Registry to "disable Defendants' [d]omain [n]ames and make them inactive and untransferable, unless and until Plaintiffs request that any given domain name be re-activated" and, in addition, to "immediately transfer the Defendants' [i]nfringing [d]omain[] [names] to the ownership and control of Plaintiffs, through the registrar of Plaintiffs' choosing." Thus, both orders, the December 2 order and the December 20 order, require Public Interest Registry affirmatively to perform one or more acts.

The law is clear that a court may not require a person over whom it has not acquired valid in personam jurisdiction to perform an act. Squeez-A-Purse Corp. v. Stiller, 31 F.R.D. 261, 263 (S.D.N.Y. 1962). As Judge Learned Hand, writing for the Second Circuit, explained,

3

> [N]o court can make a decree which will bind any one but a party; a court of
> equity is as much so limited as a court of law; it cannot lawfully enjoin the world
> at large, no matter how broadly it words its decree. If it assumes to do so, the
> decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it.
> It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction
> is limited to those over whom it gets personal service, and who therefore can have
> their day in court.

Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832–33 (2d Cir. 1930).  Because Public Interest

Registry was not joined as a party in the underlying lawsuit, and was not an "officer[], agent[],

servant[], employee[], [or] attorney[]" of any defendant, see Fed. R. Civ. P. 65(d)(A)–(B), I

lacked the authority to order Public Interest Registry affirmatively to act, i.e., to disable or

otherwise render inactive defendants' infringing domain names and transfer them to plaintiffs'

ownership and control.  Public Interest Registry cannot be held in contempt of my December 2

or December 20 orders for having failed to do what I lacked the authority to require it to do in

the first instance.

At oral argument, Plaintiffs proceeded on a different theory, that Public Interest

Registry had aided and abetted defendants in violating this court's orders.  See Alemite Mfg., 42

F.2d at 833 ("[T]he only occasion when a person not a party may be punished, is when he has

helped to bring about, not merely what the decree has forbidden, because it may have gone too

far, but what it has power to forbid, an act of a party.").  Although I lacked the power, under the

December 2 and December 20 orders, to require Public Interest Registry to take down

defendants' websites, I had the power and authority to enjoin it from aiding and abetting, or

participating, in defendants' unlawful activities.

Public Interest Registry, for example, cannot continue to make the connections

that enable customers attracted to defendants' websites to access those websites. Physically,

such a connection is made when a customer types one of defendants' domain names ending in

".org," such as "officialpolos.org," into an Internet browser window or clicks on a hyperlink that corresponds to such a domain name. Public Interest Registry's server responds to the customer's initiated message by supplying the link that connects the customer to the appropriate second-level domain name server, which, in turn, directs the customer to the specific website he or she addressed. See GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 618-19 (E.D. Va. 2003).

The system that allows Public Interest Registry to continue to make these connections is kept current by entities known as domain name registrars. "A domain name is created when it is registered with the appropriate registry operator"—here, Public Interest Registry, which maintains the authoritative database of all ".org" domain names. Coal. for ICANN Transparency Inc. v. VeriSign, Inc., 464 F. Supp. 2d 948, 952 (N.D. Cal. 2006), rev'd on other grounds, 567 F.3d 1084 (9th Cir. 2009). Public Interest Registry receives instructions for domain name registrations and registration renewals from domain name registrars who act, in turn, on the instructions of a member of the public. See id. Thus, the public, through domain name registrars, gains access to the ".org" registry system managed by Public Interest Registry. Apparently, the registrars who acted for defendants with respect to their infringing domain names are located overseas, beyond the reach of this court's jurisdiction.

My injunction, once served on Public Interest Registry, should have alerted it to no longer play its role in allowing customers to connect to defendant counterfeiters' websites, for Public Interest Registry would, by continuing to do so, commit an unlawful act, by aiding and abetting in defendants' unlawful counterfeiting activities in violation of United States law. Furthermore, Public Interest Registry should no longer have accepted transmissions of registration information from registrars who had received defendants' orders for domain name

5

registrations and registration renewals because my injunction advised that defendants' domain names had been used to advertise and sell counterfeits of plaintiffs' goods.

Plaintiffs may, if they wish, renew their motion to make clear that the scope of the permanent injunction against defendants applies to Public Interest Registry for aiding and abetting, and participating, in defendants' unlawful activities. For, if Public Interest Registry continues to connect customers to defendant counterfeiters' websites, and continues to permit the registration and renewal of defendants' infringing domain names, Public Interest Registry will itself have violated the permanent injunction against defendants.

For the reasons stated, I vacate my ruling of June 13, 2011, which granted plaintiffs' motion to hold Public Interest Registry in contempt, and I hereby deny plaintiffs' motion. The Clerk shall mark the motion (Doc. No. 36) terminated. Plaintiffs may, if they wish, renew their motion in the manner indicated above.

SO ORDERED.

Dated:      June 27, 2011
            New York, New York

_____
                        ALVIN K. HELLERSTEIN
                        United States District Judge

6